[See Case No. 14,355.]

---

UNION BANK (GAREY v.). See Case No. 5,241.

---

## Case No. 14,351.

UNION BANK v. NEW ORLEANS et al.

[5 Am. Law Reg. (N. S.) 555.]

Provisional Court,[1] State of Louisiana. 1866.

LOST INSTRUMENTS—MUNICIPAL BONDS—COUPONS—PAST DUE—BONDS WRONGFULLY WITHHELD — ADVERTISEMENT.

1. On the occupation of New Orleans and the neighboring parts of the state by the federal forces, in April, 1862, the officers of the rebel state government fled from Baton Rouge, the capital, to other parts of the state still held by the rebels, claiming to carry the government with them. The auditor of the state carried with him the public bonds belonging to the banks, deposited with him, according to law, as security for their circulation. These securities were held by him without warrant of law, as against any one claiming through the federal government.

[1] [This court was established by an executive order of the president of the United States, October 20, 1862, a copy of which is given in Case No. 16,146. See, also, The Grapeshot, 9 Wall. (76 U. S.) 129. The records of the provisional court were transferred to the district court by act of July 28, 1866 (14 Stat. 344, c. 310).]

2. Securities, so withheld within the lines of the enemy, are lost, within the meaning of the law authorizing a recovery on instruments lost, without producing them.

3. Money, whether principal or interest, coming due on such securities, is due to the actual legal owner of them, and not to the person who wrongfully holds them.

4. Coupons are negotiable evidences of debts for interest, and are, in substance, promissory notes, payable at a specified time. If taken by any person, after they are due, they are taken subject to all the equities which properly attach to them in the hands of the previous holder.

5. A recovery may be had by the owner for the interest due on bonds, without producing the original coupons, on its being shown that they are wrongfully withheld from him in the territory of an enemy, and are therefore inaccessible to him, and also that they were so held when they became due, so that no one, hereafter to appear, can have the rights to them of a bona fide holder, for value, without notice.

6. Securities so withheld by the rebel state auditor, their locus being shown, are not lost within the meaning of the article of the Civil Code of Louisiana requiring that securities lost shall be advertised before a recovery can be had on them.

This was a suit, commenced by the Union Bank of Louisiana, to recover the sum of $90.000, being the amount of interest due on five hundred bonds of the consolidated debt of the city of New Orleans, under the following circumstances: The said bonds, with the coupons attached, were deposited with the auditor of public accounts, at Baton Rouge, in 1854, by the plaintiff, to secure the redemption of the circulating notes of the plaintiff, issued in conformity with the free banking laws of 1853, of the state of Louisiana; to be transferred and returned by the auditor to plaintiff upon its application, accompanied by a delivery to him of cancelled circulating notes to an equal amount or pro rata. On the capture of New Orleans and that part of the state in 1862, the officers of the insurrectionary government fled to avoid falling within the federal lines, first to Opelousas and then to Shreveport, continuing to exercise their official functions at the places of their flight; the auditor carried with him the bonds so deposited. Under a special pass from Gen. Banks, the plaintiff did, by an agent, deliver cancelled notes to the amount of $252.600 to the rebel auditor at Shreveport, and applied for the return of an equal amount of bonds with their coupons; the said auditor refused to deliver the same, and was prohibited by the rebel legislature from doing so. The plaintiff finding it impossible to obtain the coupons, then applied to the mayor of New Orleans, and to the First National Bank of New Orleans, the fiscal agent of the city, with which were deposited, as required by law, certain revenues of the city, dedicated exclusively to the payment of these bonds, to pay the interest due on them, without the production of the coupons, which was refused by them, and this suit was thereupon commenced. On the trial all the above facts were either proved or admitted.

William H. Hunt, for plaintiff.

Christian Roselius and Sullivan, Billings & Hughes, for defendant, the city of New Orleans.

Miles Taylor, for defendant, the First National Bank of New Orleans.

PEABODY, Provisional Judge. The plaintiff was the owner of bonds of the city of New Orleans to the amount of $500,000. The bonds are not yet due. The interest on them was payable semi-annually in July and January of each year. The principal and interest are expressly stipulated to be paid on the face of the bonds themselves. There were also separate from the bonds, coupons for the interest—one for the interest on each bond for each half year. These coupons are separate, or separable by the holder, from the bonds, and show, each of them, how much interest is due, and the particular time at which it is due according to the tenor of the bond to which it relates. Each bond is payable to bearer, and each coupon for the interest on it is also payable to bearer. These bonds and coupons were by plaintiff deposited with the auditor of the state of Louisiana. He was to hold them as security for the redemption and payment by plaintiff of certain bills issued by it. Whenever those bills or notes should be paid and cancelled, he was to return the bonds and coupons to plaintiff, and so pro rata when any part should be paid. This deposit was made under a law of the state under which plaintiff organized and obtained its corporate powers; and being a matter between the plaintiff and the bill-holders as parties in interest, it is much the same as if it had been done by compact between them. Two hundred and fifty-two thousand dollars of the bills or notes of the bank, for which the bonds or coupons were pledged, have been paid and cancelled. Those notes have been returned to the person with whom the bonds and coupons were deposited as auditor, and plaintiff has demanded and sought to obtain from him the bonds and coupons held as security for them, but has been and is wholly unable to recover them by legal process or otherwise. Moreover, the man with whom, as auditor, they were pledged (Mr. Peralta) has ceased to be an officer of this state, and has fled beyond the jurisdiction of the authorities thereof, and for all practical purposes, out of the state, taking the securities with him. Both the man and securities are entirely beyond the reach of plaintiff and beyond all process of courts or of the government itself. He is moreover an alien enemy of the United States, and he and the securities with him are within the lines of the enemy, in territory held by them jure belli, and therefore in law as well as in fact inaccessible to plaintiff, and incapable of being dealt with by it.

Money for the payment of the interest due has been deposited by the city, the debtor.

with the defendant "The First National Bank," the legal fiscal agent of the city, and is held by it for that purpose, and for that purpose alone. That interest the bank is willing to pay if the coupons are produced, but it refuses to pay it until they are produced, on the ground that it is authorized to pay only on the surrender of the coupons, and that the coupons being outstanding may hereafter appear in the hands of some one who can compel payment from one or the other of the defendants to him. Plaintiff claims to recover the interest due; he claims to do this without producing the coupons, on the ground that they are placed beyond his power to produce by the unwarranted action of the recreant trustee, being detained by him wrongfully within the enemy's lines. The claim is, that as plaintiff is the actual owner of the securities (bonds and coupons), it has a right to be paid what is due on them, and that as they were both in the hands of Mr. Peralta after the interest sought to be recovered, and the coupons for it had become due, and no one had any right to them then, no one can now have, or can hereafter acquire a title to them which will enable him to recover on them after payment made to plaintiff. Of the matters discussed on the trial, many of them at very great length, these are all that are material to the case, in the view I have taken, and most of them were substantially conceded, and nearly all the rest are very easily deduced from the evidence.

On these facts one question arises: Are the coupons for the interest, which plaintiff claims to recover, shown to be so situated that no one hereafter can appear to have the right to them of a bonâ fide holder for value without notice? If they are, plaintiff must recover; if they are not, it is not so easy to say how he can recover. If they are so situated, at any rate there is no difficulty in deciding that he may recover. The mere fact that they are in the territory of the enemy of the United States, with which no legal intercourse can be had, in the hands of an alien enemy there, is quite sufficient to warrant a recovery without the production of them in a proper case, and whether the holder is an auditor or not an auditor, or whatever he is, "quocunque nomine gaudet," and whether in law they may be deemed lost or not lost, it is plain that they are within the familiar principle of law, applicable to securities lost or wrongfully withheld, and which authorizes a recovery without the production of them. It is equally clear that if their locus there is shown, they are not lost within the rule of the Code—one of evidence merely—that before a recovery can be had on securities as lost, they must be advertised, &c. They are there, and they are beyond the power of the plaintiff, without his fault, and that is all that is necessary to warrant a recovery without the production of them in a case proper in other respects.

The bonds and not the coupons are the basis of the right to recover, the coupons being each a mere memorandum of the interest due from time to time on each bond, and of the time when such amount by the terms of the bond becomes due. The bonds are not intended to be surrendered when the interest is paid, but the coupons, if within the power of the owner, are ordinarily surrendered when the sums due on them are paid; and in this manner the coupons in the hands of the debtor become vouchers of the fact of payment, as they had previously, in the hands of the creditor, been evidence of the debt, and also that the amount stated was due, not to the holder of the bond (unless the same person held both bond and coupon), but to the holder of the coupon itself. In this manner they are made to answer probably three purposes; they make each separate half year's interest on each bond negotiable by itself, separately from the rest of the bond, and answer the purposes of evidence in the hands of the creditor and of the debtor in turn, as above stated, in the one evidence of debt and in the other evidence of payment. The bonds claimed to the amount of $252,000 and the coupons attached, beyond all question, are the property of plaintiff, and are relieved from all right of possession in the present custodian, and so indeed, I think I may add, are all the rest of the half million in his hands. He is a mere wrongdoer as to all, and has no right to any part of them; I think, even if he were in law and in fact the auditor of the state, it would make no difference. A fugitive from the state and the securities with him, he would have no right to retain them I think as against the bank, in his flight and away from his post of duty. It would be abundantly easier to hold that he might rightfully withhold them, a fugitive in the land of the Dey of Algiers, that distinguished potentate being at peace with this country, than to hold that he had a right out of the territory held by this government, and within the territory of an enemy where no citizen of this country could have access, to retain them there. But he is not auditor of the state in law or in fact, and would have no right to retain them anywhere—not even in the state, and at a proper place for an auditor to be at for the performance of his duties as such officer; and under the circumstances he surely has no right at all to hold them, or any of them.

But the question recurs, and it is the only one remaining to be considered: Are the coupons shown to be so situated that no one else can now have or hereafter acquire a title to them, which shall enable him to maintain an action on them? For it is not doubted that they are in their nature negotiable, like promissory notes, and a person who takes them before due for value, without notice of a defence in the hands of a previous holder, takes them discharged from all defences which might exist against them in the hands of any party through whom he derives title. The plain-

tiff, in his petition, alleges that they (the coupons in question, at any rate to the amount of sixty thousand dollars), remained in the hands of Mr. Peralta until after the time at which they became due. He says: "The coupons for the interest due on the 1st July, 1862, the 1st of January and the 1st of July, 1863, and the 1st of January, 1864, amounting to sixty thousand dollars, were in the possession of the auditor (Mr. Peralta), at Baton Rouge, after the same matured and became due." The answer of the city takes issue on this, in a very general way, by denying in general terms the allegations of the petition not therein specially admitted. It suggests no alteration in their position, and, indeed, makes no allusion to this allegation of the petition at all, but is content with a general sweeping denial of all, not expressly admitted in the answer, more or less. This, however, is sufficient to change the burden of proof, and throws it on the plaintiff. The answer of the city takes issue in a different manner, and denies pointedly and specifically whatever of the plaintiff's allegations it seeks to put at issue. After treating several other allegations of the petition, it answers to the allegation above stated, in substance, that the coupons to the amount of $60,000 remained in and were in possession of the auditor after they became due, not by denying that they were so, but by denying that they were in his hands at the time they became due "or are so now," that is, at the time the answer was made. It says: "It (meaning the city) denies that the coupons which matured on the 1st day of July, 1862, or the 1st day of January, 1863, or the 1st day of July, 1863, or the 1st day of January, 1864, or any other coupons, the property of the Union Bank, were in the possession of said auditor at the time of their maturity, or now are." This is not a denial that they have ever been so since they became due, and nothing less than that will put the very material averment of the plaintiff in that respect in issue.

The evidence in the case seems to sustain the allegation of the petition. Very slight evidence would be sufficient for the purpose in the existing condition of the case. The First National Bank does in a formal manner deny it, and as to it evidence would be necessary if it were in a condition to make such an issue. But it is at least doubtful if the First National Bank has an interest that permits it to make such an issue. That institution, as the fiscal agent of the city, and the depository agreed on between the plaintiff, the owner of these securities, and the city the debtor, is but a trustee for the benefit of the city and the plaintiff, and the parties in interest being both parties to this suit, and bound by the judgment herein, it is at least doubtful, whether the bank, their trustee, should be heard to make an objection which neither of the parties in interest deigns to interpose. It is not material to the bank to whom it pays. In the disbursements of moneys belonging to the city

it would perhaps incur no responsibility, except to the city, and the city being a party to this suit, will take care of its own interests and will be bound by the decision herein. It is not certain, however, and I will not assume that the bank would not, under any circumstances, be liable to the holders of the coupons in question, if any should be able to establish a right to recover on them. The bank will be protected beyond all doubt by the judgment herein as against the plaintiff and its co-defendant, the city of New Orleans.

How stands the case on the evidence? First. They are shown to have been deposited, as above stated, with Mr. Peralta, then auditor, and there is no proof or allegation that they have gone from his possession into that of any one else, and I am not aware that any presumption of such a change arises in the absence of proof and allegations to that effect. It is true that they should have gone from him to his successor in office, Mr. Torry, and, perhaps, that should be presumed in the absence of evidence; but that gentleman was called as a witness, and testified that they did not so come, and any such presumption is sufficiently negatived; and when it is recollected that the same Mr. Peralta still claims to be auditor of the state, and is exercising (although in his own wrong) the functions of that office at Shreveport or elsewhere, the omission to transfer to Mr. Torry, as his successor, the books, papers, and property of the office is accounted for, and the presumption that they still remain with him (Mr. Peralta) is not a little strengthened. Add to this the fact that he could not legally or without crime transfer or dispose of them to any one else, and that presumption becomes stronger still. Moreover, this Mr. Peralta, although no officer, and having none of the rights of one, is nevertheless claiming to be so, and conducting himself as such; and although, as I have said, he has no right to these securities, and in withholding them is acting without warrant of law, still the fact is that he professes and attempts to play that character, and actually believes that he is doing so, and perhaps that he has the right so to do; and these securities in his hands are perhaps no more likely to be diverted by his criminal act to purposes wholly foreign to those for which they were deposited, or fraudulently sold or put in circulation in violation of duty, real or fancied, and of honesty and good morals, than they would be if he were actually and de jure auditor of the state, as he claims to be and to act, and as he no doubt is and has long been de facto of that large portion of the state held in occupation by the enemy; no more likely to be criminally converted to private purposes by him now than they were when held by the same person when he was (as all concede he was at one time) actual and bona fide auditor of the state de jure as well as de facto:

When the plaintiff applied to Mr. Peralta for these securities, by its agent, Mr. Gordon,

Mr. Peralta claiming to act as auditor, received the cancelled notes and was about to deliver to him bonds to a corresponding amount, but was dissuaded from doing so, and was finally overruled in his determination; and admitting that he still retained them, and that they belonged to plaintiff, and ought to go to him, yielded to adverse influence and refused to let plaintiff have them. He did not pretend that he did not still hold them, but on the contrary admitted the reverse, and wished to restore them to plaintiff by delivering them to Mr. Gordon.

But, aside from all evidence introduced as such at the trial, the conduct of this person, claiming to be auditor of this state under the rebel government, in reference to these public securities, in the case of the plaintiff and those of several other public institutions similarly situated, has become almost matter of public or historical information, and we are all of us informed in the premises. And while with the strict non-intercourse maintained with the enemy, and all within his lines, by reason of the war, it is difficult to procure testimony from witnesses having personal knowledge on the subject, still intelligence on the subject, as reliable as can ordinarily be had in such a case, is possessed and by everybody fully relied on, that these securities are retained by the person claiming to be auditor, exactly as if he were really auditor, and by him kept out of circulation or use in any manner; and no one I believe doubts the fact. Mr. Peralta is in no just legal sense a public officer in our estimation, although he assumes to act as such, and is performing the role of auditor. If he were in law, as he and those associated with him claim he is—and we all know that he is de facto, as to a large part of the state, a public officer—auditor of public accounts, the evidence would seems different; but as it is, it seems to carry conviction to the minds of all. On the trial no real doubt seemed to be entertained by any one what in point of fact was the actual condition of these securities, and it was almost assumed. If the securities had gone out of the possession of Mr. Peralta into the hands of a bona fide holder, or in such manner that they were liable to get there before they became due, that fact would be vital to the defence and fatal to the plaintiff; and yet, if I recollect correctly, nothing of the kind was intimated; nothing of the kind was alleged in the proceedings or shown, or attempted to be shown in evidence, or claimed or suggested on the argument of the case. They were abundantly shown to have been placed there, and the evidence that they had not been removed or taken away was as good and convincing as proof of a negative often is. There is, in my judgment, evidence enough, under the circumstances, to establish the fact against the denial of it by the defendants as to the $60,000, and to make it highly probable as to the remaining $30,000.

On the whole, I think that the plaintiff should be allowed to recover the sum claimed by the petition as due January, 1862, and January and July, 1863, and January, 1864, to the amount of $60,000. And as to the amount claimed as due July, 1864, and January, 1865 ($30,000), he may recover that on giving defendants good security, to be approved by the court, to save them harmless from all persons hereafter to claim to recover the same.